JOHANSEN BROS. SHOE CO. et al. v. ALLES et al.

(Circuit Court of Appeals, Eighth Circuit.   May 29, 1912.)

No. 115 (Original).

1. BANKRUPTCY (§ 446*) — DENIAL OF INVOLUNTARY PETITION — PETITION TO REVISE—QUESTIONS REVIEWABLE.

A petition to revise an order denying an involuntary petition in bankruptcy presents only a question of law which must arise on the record.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 446.*

Appeal and review in bankruptcy cases, see note to Fisher v. Cushman, 43 C. C. A. 389.]

2. BANKRUPTCY (§ 89*)—"CREDITORS"—WHO ARE.

Where creditors petitioning for a revision of an order denying an involuntary petition in bankruptcy declared that a third person was a creditor of the alleged bankrupt, and the third person in his verified answer to the petition averred that he was a creditor in a specified sum above the value of the security held by him, and the answer was not denied, and the special master treated the third person as a creditor, the third person was a creditor within Bankr. Act July 1, 1898, c. 541, § 57, c, h, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), and he could plead to a petition in involuntary bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 120–122; Dec. Dig. § 89.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

3. BANKRUPTCY (§ 59*)—"ACT OF BANKRUPTCY."

A solvent debtor who mortgages his stock in trade to secure a debt, and who permits his secured creditor to obtain a preference through legal proceedings, does not commit an act of bankruptcy within Bankr. Act July 1, 1898, c. 541, § 3, subds, 2, 3, 30 Stat. 546 (U. S. Comp. St. 1901, p. 2423), making insolvency of the debtor at the time of the transfer with intent to prefer a creditor over others or at the time he permits a creditor to obtain a preference through legal proceedings essential to constitute acts of bankruptcy, and a petition to revise an order denying an involuntary petition in bankruptcy based on such acts is properly denied, where it shows the solvency of the alleged bankrupt at the time of the mortgage and preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622–7623.]

4. FRAUDULENT CONVEYANCES (§§ 137, 149*) — MORTGAGES — POSSESSION BY MORTGAGOR—"VOID."

A mortgage of a stock in trade executed by a debtor to his creditor which authorizes the mortgagor to remain in possession, and sell the stock in the usual course of business, without obligating himself to apply the proceeds to the payment of the debt, is constructively fraudulent, and void as to other creditors, within Rev. St. Mo. 1909, §§ 2880, 2881, declaring that any conveyance in trust for the use of person making it or with intent to defraud creditors is void as to creditors, but, in the absence of actual fraud, the constructive fraud is purged by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mortgagee taking possession before the other creditors seize the property or take any action to enforce their rights to it.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 432–437, 462–463½; Dec. Dig. §§ 137, 149.*

For other definitions, see Words and Phrases, vol. 8, pp. 7332–7339; vol. 8, p. 7830.]

5. COURTS (§ 367*)—FRAUDULENT CONVEYANCES—DECISIONS OF STATE COURTS —CONCLUSIVENESS.

Where the execution by a debtor of a mortgage is relied on as an act defrauding other creditors, justifying an adjudication of bankruptcy on an involuntary petition therefor, the decisions of the state Supreme Court construing the statute defining fraudulent conveyances and the acts necessary to purge constructive fraud based on such statutes are binding on the federal courts sitting in the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

6. CHATTEL MORTGAGES (§ 143*)—STOCK IN TRADE—PROPERTY INCLUDED IN MORTGAGE.

Taking possession by the mortgagee of after-acquired chattels which by the mortgage is pledged to secure the mortgagee subjects such property, except as to prior purchasers and attaching creditors, to the obligation of the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 240; Dec. Dig. § 143.*]

Hook, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Eastern District of Missouri.

Petition by the Johansen Bros. Shoe Company and others against Herman Alles and another to revise an order denying an involuntary petition to adjudge defendant J. Brooks Johnson a bankrupt. Dismissed.

On October 29, 1910, Johnson was indebted to Alles in the sum of $1,400 balance due for a stock of boots and shoes before then purchased by him from Alles, and on that day he purchased another lot of boots and shoes for $1,100. As security for the payment of this indebtedness aggregating $2,500 which was evidenced by several promissory notes, payable, respectively, on the 1st day of each month thereafter, beginning on November 1, 1910, Johnson executed to Alles a chattel mortgage conveying to him his entire stock in trade then on hand, including the new purchase of that day. The mortgage contained this provision: "The said J. Brooks Johnson shall have the right to sell from the above stock in the regular course of a retail shoe business, and he agrees to replenish the same by new purchases and agrees to keep the said stock at all times up to a value of twenty per cent. above the amount unpaid at such time under this mortgage, and all stock so bought and all personal property acquired by the said J. Brooks Johnson and used in said business hereafter, shall be included in and subjected to this mortgage to the same extent and with like effect as if now owned and described in this mortgage."

The mortgage contained a provision authorizing the mortgagee to take possession of the property thereby conveyed in case of failure of the mortgagor to pay any of the notes as therein provided and authorized the mortgagee to sell the property in case of default. Johnson having failed to pay the notes maturing January 1 and February 1, 1911, Alles demanded possession of the

property mortgaged and upon Johnson's refusal to surrender possession, on February 20, 1911, sued out a writ of replevin in the circuit court in the city of St. Louis, obtained an order of delivery which was duly executed by the sheriff of the city taking the same into his possession and delivering it to Alles.

Up to about February 20, 1911, Johnson carried on business of a retail dealer, and sold boots and shoes from the stock mortgaged and also from time to time purchased shoes to keep the stock up. On February 28, 1911, certain creditors, the petitioners herein, filed a petition in the District Court to secure an adjudication of bankruptcy against Johnson, who then owed Alles $2,110 on his mortgage indebtedness, and owed other creditors, including the petitioning creditors, about $750.

Three acts of bankruptcy were alleged in the involuntary petition: (1) That on October 19, 1910, Johnson transferred all his property to Alles with intent to hinder, delay, and defraud his creditors; (2) that on the same day Johnson, being insolvent, transferred a portion of his property to his creditor Alles with intent to prefer him over his other creditors; and (3) that, being insolvent, he suffered and permitted Alles, one of his creditors, to obtain a preference through legal proceedings without having vacated or discharged such preference within five days before the sale of the property affected by such preference.

Johnson made no defense to this petition, but Alles filed an answer alleging, in substance, that Johnson was indebted to him in the sum of $2,091.75 represented by notes secured by the chattel mortgage already referred to; that he was a creditor of Johnson in the sum of about $400, being the amount of the indebtedness aforesaid, above the value of the security held by him. He denied that Johnson was insolvent, and denied that he had committed any of the acts of bankruptcy charged against him. The petition was then referred to a special master to hear the evidence and report for the information of the court. His report shows that he heard the evidence and certified a transcript of it to the District Court, and that on the evidence so taken no act of bankruptcy had been committed. The District Court approved this report, and declined to adjudicate Johnson a bankrupt. Thereupon this original petition to revise the action of the District Court was filed in this court.

Morris G. Levinson, for petitioners.

William Hilkerbaumer (McShane & Goodwin, on the brief), for respondents.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). It is first contended that Alles was not a creditor of Johnson, and had no standing to defend against his adjudication.

[1] This petition to revise presents only a question of law for our consideration. This must arise on the record brought before us.

[2] Taking that record as a whole, we think Alles must be treated as a creditor. The petitioning creditors in their petition declared him to be a creditor. In his verified answer to the petition he alleged that he was a creditor in the sum of $400 over and above the value of the security held by him, and this is nowhere denied. The special master in his report, after reciting the evidence of the bankrupt to the effect that the fair value of the stock and fixtures taken from him in the replevin suit was from $1,500 to $1,800, treated Alles as a creditor. His status as a creditor therefore is fixed by the record.

Because a secured creditor may prove a debt in an amount in ex-

cess of the value of his securities (section 57c and "h"), and because any one who has a demand or claim "provable in bankruptcy" is a creditor within the meaning of the act, and because "any creditor may appear and plead" to a petition in involuntary bankruptcy, Alles had a clear right to make a defense against Johnson's adjudication.

[3] Insolvency of the debtor (a) at the time of the transfer with the intent to prefer one creditor over others, or (b) at the time he suffered or permitted a creditor to obtain a preference through legal proceedings, etc., is a necessary element or condition to either the second or third acts of bankruptcy alleged against Johnson. Without it no adjudication could have been had on them. Section 3, subds. 2 and 3 of the Bankruptcy Act. The petition to revise, failing to show that Johnson was insolvent, but, on the contrary, showing him to have been solvent on October 25, 1910, discloses no error on the part of the trial court in not adjudicating him a bankrupt on either of those grounds.

[4] The only other act of bankruptcy charged is that on October 29, 1910, he conveyed and transferred his property to Herman Alles with intent to hinder, delay, and defraud his creditor; and the chattel mortgage of that date is the only conveyance or transfer relied upon to sustain this charge. A prior mortgage had been given to Alles by Johnson for the purchase price of the first stock of goods purchased by him. This was in March, 1910. But, as it was superseded by the mortgage of October 29th of that year, it ceases to be of interest in this case, except as it bears on the question of actual fraud hereinafter discussed, and no further reference will be made of it. The mortgage in question was duly acknowledged by Johnson on the day of its date, October 29, 1910, and was filed for record and duly recorded in the recorder's office of the city of St. Louis, where the parties resided and the property was situated, on November 1, 1910. The mortgagor was then solvent and apart from the legal effect of the peculiar provisions of the mortgage in question the transaction would not have been with intent to hinder, delay, or defraud creditors.

Because the mortgage authorized the mortgagor to remain in possession of the stock of goods and sell the same in the usual course of business without any obligation to apply the proceeds to the payment of the mortgage debt, it was a conveyance to the use of the mortgagor, and was constructively fraudulent and void in law as to creditors within the meaning of the Missouri statute governing fraudulent conveyances. Sections 2880 and 2881, R. S. 1909. These declare, in substance, (1) that any conveyance of goods and chattels in trust to the use of the person making the conveyance; and (2) that any conveyance of goods and chattels made with intent to hinder, delay, or defraud creditors is void as to creditors and purchasers. That this is the meaning of those sections and that a conveyance contrary to their provisions constitutes a constructive fraud at least is manifest by reference to the following Missouri decisions: White v. Graves, 68 Mo. 218; Kuh v. Garvin, 125 Mo. 547, 28 S. W. 847; Barton v. Sitlington, 128 Mo. 164, 30 S. W. 514; Bank v. Powers, 134 Mo.

432, 35 S. W. 1132; Rubber Mfg. Co. v. Supply Co., 149 Mo. 538, 50 S. W. 912.

[5] It may be admitted that this constructive fraud or fraud in law is equivalent in many respects to fraud in fact (Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610), and that, if there was nothing else in this case except the mortgage of October 29, 1910, which constitutes a transfer to the use of the mortgagor, an adjudication of bankruptcy on the ground that the transfer was designed to hinder, delay, or defraud creditors would have been warranted. These statutes relating to the force and effect to be given to conveyances of property in Missouri must be construed by us as they are construed by the Supreme Court of the state. Bryant v. Swofford Bros., 214 U. S. 279, 290, 29 Sup. Ct. 614, 53 L. Ed. 997. To the decisions of that court, therefore, we must look for our guidance in this case. They declare with perfect unanimity, as already pointed out, that a conveyance to the use of a mortgagor, although good as between the parties themselves, is constructively fraudulent as to creditors; but they declare with equal unanimity that, in the absence of actual fraud, the constructive fraud implied from such a conveyance is purged away even as to creditors by the mortgagee taking possession of the property mortgaged before the creditors seize the property or take any action to enforce their rights to it. Greeley v. Reading, 74 Mo. 309; Dobyns v. Meyer, 95 Mo. 132, 8 S. W. 251, 6 Am. St. Rep. 32; Petring v. Chrisler, 90 Mo. 649, 654, 3 S. W. 405; Rubber Mfg. Co. v. Supply Co., supra; Joseph, Nelke & Co. v. Boldridge, 43 Mo. App. 333, 336; Jackson v. Burgess, 143 Mo. App. 438, 128 S. W. 821.

A few quotations from the opinions in the foregoing cases will disclose the view of the Supreme Court on the subject. For instance, in Dobyns v. Meyer it is said:

"Notwithstanding the agreement that the manufacturing company [the mortgagor] might sell the stock in trade in the usual course of business, the deed of trust was valid as between the parties thereto. No actual fraud was intended by the parties, and it would seem that, if the objectionable parol agreement was abrogated before the rights of creditors attached, the deed of trust ought to be held valid from that time on, even as to creditors. An entirely new pledge, freed from such agreement, would have been valid. The effect of taking possession under the deed of trust for the purposes therein specified, with the consent of the assignee, was to abrogate the previous objectionable parol agreement."

In Petring v. Chrisler it is said:

"Where the mortgagee, in good faith, takes actual possession of the goods prior to the levy of the attachment, for the purpose of securing the payment of his debt, and continues to hold the actual possession up to the time of the levy, he will be protected, and will, in that event, hold the goods as against the subsequent attaching creditor, and that, under this state of facts, it is immaterial that the mortgage contains stipulations which render it void, except as between the parties."

In Rubber Mfg. Co. v. Supply Co., the court says that the taking by the mortgagee of possession before a creditor's seizure of goods. "would have cured the invalidity with which those deeds of trust were

tainted provided always the subsequent conduct and agreements between the beneficiary bank, and the grantor and trustee do not disclose that these trust deeds and the possession of the trustee were in fact a scheme for the use of the grantor, and designed to hinder, delay, and defraud the other creditors of the grantor."

In Joseph, Nelke & Co. v. Boldridge the rule of the Supreme Court of the state was succinctly stated by the Court of Appeals as follows:

"It appears from the plaintiffs' evidence that possession was taken by both Boldridge and Muldrow [the mortgagees] of the goods conveyed in the instruments, now challenged for fraud, prior to any levy of plaintiffs' attachment writ upon them (no such levy being ever made), and prior to the institution of the present suit in equity. These mortgages, therefore, although fraudulent in law as to creditors, were, in the absence of any fraud in fact, purged of the legal fraud by delivery of the goods, and validated even as against creditors."

In Jackson v. Burgess the same court said: If a mortgage on personal property contained permission to the mortgagor to remain in possession and to sell at retail without accounting to the plaintiff for the proceeds the mortgage was fraudulent as to the attaching creditors though the debt itself was valid, but, "if before an attachment was levied the property was taken into the actual possession of plaintiff, it gave him a valid lien thereon, and he had a right to the possession to the exclusion of the attachment creditors."

These decisions would seem to indicate very clearly that a mortgagee in a mortgage made actually in good faith with no intent to hinder, delay, or defraud, but in which there was a constructive fraud like that in this case, may favor the mortgagor by permitting him to go on with his business in the usual course, subject only to the hazard or risk of creditors or purchasers seizing the property or otherwise asserting their right to it because of the constructive fraud, before he, the mortgagee, takes actual possession. In other words, the decisions seem to confer upon the mortgagee the opportunity of curing or purging from the mortgage the objectionable provision and validating the same even as to creditors by actually taking possession of the property mortgaged pursuant to a power reserved in the mortgage enabling him to do so, before any creditors assert their right to it by seizure or otherwise. The mortgage in this case being of record, imparted, according to the laws of the state of Missouri, notice to the public, and, of course, to the creditors of the mortgagor, of all of its provisions. They at any rate had constructive knowledge of the mortgage and of its provisions, equally as certain of being real as the mortgagee's constructive fraud was certain of being actual. They therefore knew that the mortgage was good as between the parties, and knew that they might proceed against it and fix a lien upon it for their claims superior to the right of the mortgagee if they desired to exercise the requisite diligence to do so. They knew that they must act if at all before the mortgagee should exercise his right to take possession of the property. Their failure to do so indicates their confidence in the honor and integrity of their debtor, and emphasizes what is apparent in this case, the solvency of their debtor and the actual good faith of his transaction with the mortgagee. There are, therefore,

no equitable considerations which in any manner incline us to ignore the doctrine of the state of Missouri which makes for the benefit of the mortgagor in this case.

Except for the suggestion that the constructive fraud inherent in the mortgage itself constituted an act of bankruptcy as soon as the mortgage was made and that it persisted until the petitioning creditors proceeded in this case, notwithstanding the possession taken by the mortgagee, we would not further protract this opinion. In answer to that suggestion we can only refer to the doctrine of the Supreme Court of the state of Missouri which in effect makes the act of taking possession cure or purge away any constructive fraud which may have persisted until the act of taking possession occurred. The right to take possession conferred by the mortgage itself and thus to cure the constructive fraud seems to be an antidote accompanying the poison, which if taken before creditors take action affords an effective remedy.

[6] Some argument is made that in as much as the mortgage conveyed after-acquired property it was fraudulent. This argument is fully answered by the cases of Keating v. Hannenkamp, 100 Mo. 161, 13 S. W. 89, and New England Nat. Bank v. Northwestern Nat. Bank, 171 Mo. 307, 71 S. W. 191, 60 L. R. A. 256. Taking possession by the mortgagee of after-acquired property which by the terms of the mortgage was pledged to secure the debt of the mortgagee effectually subjects such property except as to prior purchasers and attaching creditors to the obligations of the instrument.

A critical consideration of the facts disclosed by the petition before us convinces us that no error was committed in declining to adjudicate Johnson a bankrupt. Therefore the petition to revise his action in so doing is dismissed.

HOOK, Circuit Judge, dissents.