No. 9504.

PUEBLO FOUNDRY & MACHINE COMPANY v. LANNON, ET AL.

1. CONTRACTS—*Validity.* Frank and John Lannon owned the stock of the defendant. Burris desiring to become interested in the enterprise, it was agreed that the property of the company should be valued at $100,000. Burris was unwilling or unable to pay for one-half of the stock, at this valuation, and it was agreed to issue $40,000 in bonds, so as to reduce the value of the shares to $60,000, and the arrangement was concluded accordingly, the bonds being issued one-half to the Lannons and one-half to Burris. Only $8,000 in all, was paid for the bonds, $4,000 by the Lannons and $4,000 by Burris. All this was agreed to and approved by meetings of the stockholders and Board of Directors,—the two bodies being composed of the same persons. The bonds were secured by mortgage of the company's property. On bill to foreclose this mortgage it was contended by the corporation that the bonds were void for want of consideration under sec. 9, article XV of the Constitution. *Held* that in effect the bonds were sold at approximately par value; that the distribution of the bonds among the directors was justified by the unanimous consent of the stockholders, and that the stockholders having acquiesced and participated in the transaction, were bound by it, as were those who succeeded to their interest.

2. CORPORATIONS—*Relation to Members.* Where the stockholders have no equitable right they cannot assert any such supposed right, or obtain relief in respect thereto by acting through the corporate entity.

3. ——*Power to Dispose of Assets.* A solvent corporation may dispose of its assets as the stockholders see fit, so long as present creditors are not injured.

4. FRAUDULENT CONVEYANCES—*Future Creditors,* cannot complain.

*Error to Pueblo District Court, Hon. J. E. Rizer, Judge.*

Messrs. ADAMS & GAST and Messrs. DEVINE & PRESTON, for plaintiff in error.

Mr. N. WALTER DIXON, Mr. M. G. SAUNDERS, Mr. E. F. CHAMBERS and Mr. J. T. MCCORKLE, for defendants in error.

Mr. Justice Bailey delivered the opinion of the court.

THIS was an action by defendants in error against The Pueblo Foundry Company to foreclose a mortgage, or deed of trust on its property, securing the payment of an issue of forty thousand dollars of first mortgage bonds of that company. Defendant in error John M. Lannon, as a holder of certain of these bonds, intervened, and joined in the prayer for foreclosure. The validity of the bonds was denied by the company, it being urged that they were issued without consideration, and therefore in contravention of a provision of our State Constitution. Findings and decree were for defendants in error, and the company brings the case here for review.

The resolution authorizing the issue of the bonds in question was passed on April 1, 1907. At that time the stockholders of the company consisted of the Lannons, who owned all of the shares of the company, which were of the par value of one dollar a share. Shortly prior to the issue of the bonds it was determined by the Lannons to make a change in the affairs of the company, and John M. Lannon, who it appears had never been active in the corporation, agreed to sell his shares therein to one S. J. Burris. As a basis for negotiations it was agreed by the parties that the valuation of the property should be fixed at $100,000.00. The Lannons were to withdraw all the company cash, pay all bills against and collect all accounts due it, with a view of reducing the actual value of the shares of the concern to the figure agreed upon. Burris, who desired to purchase one-half interest in the company, was unable to raise the $50,000.00 necessary, and to

enable him to purchase such interest it was determined to further reduce the value of the shares by issuing $40,000.00 in bonds secured by deed of trust on the company property, and to so bring the real value of the total shares of the company to $60,000.00. This was accordingly done. John Lannon agreed to sell his interest for $10,000.00 in cash, and thirteen of the proposed bonds, and Frank Lannon took an option upon John's holdings in the company on that basis.

At the stockholders' meeting of April 1, 1907, the entire capital stock of the company was owned by Frank and Charles Lannon. The stock of John, not having been yet transferred, was represented by proxy. John resigned as a director of the company, and Burris was selected to take his place. At the directors' meeting, the issue of the bonds, which had been authorized by the stockholders, was directed to be made. The stock was then owned in equal parts, Frank and Charles Lannon the one-half, and Burris the other. The bonds were issued, ten each to Charles and Frank Lannon, and twenty to Burris. The two Lannon brothers each paid in $2,000.00 to the company, and Burris $4,000.00. Pending the printing and execution of the bonds, the stock owned by John Lannon was held in escrow, and Charles and Frank Lannon transferred to Burris his shares from their own holdings, and it was through Frank Lannon that Burris paid into the company the four thousand dollars for his twenty bonds. It appears that all the books of the corporation except the journal which contained the history of these transactions, were obtainable, but that the defendant corporation could not, or at least failed to produce, this particular record, although it had been in the possession of the company at all times subsequent to the transfer of the stock, and of the reorganization of the board of directors. The testimony, however, shows beyond any possible doubt that the transaction between the parties was in substance and effect as stated above.

Following the transfer of the stock as set forth, certain other persons obtained shares in the corporation, and the Lannons ceased to have any interest in the company, other than as holders of certain of the bonds in question. The present stockholders, who must be conclusively presumed to have had actual knowledge of the existence of the bonds and of all the circumstances under which they were issued, are now attempting to avoid their payment. Seven of the bonds are conceded by the company to be valid obligations. This is upon the theory that they are in the hands of innocent purchasers, although it appears that two at least of these bonds, were sold by Burris to persons with full knowledge of all the circumstances now relied upon to avoid the entire issue.

It is urged by the company that the bonds are void for lack of consideration under section 9, Article XV of the Constitution. This point is not well taken, because it is clear that $8,000.00 at least was paid in cash to the company for the bonds. The fact that this amount was paid by the Lannons does not make it any the less a payment to the company. The payment was so made because of the agreement for purchase and sale of the stock between the Lannons and Burris, and the method adopted was an entirely proper and logical way of arriving at an adjustment between the parties. Also, when the transaction is considered as a whole, it is plain that the bonds were issued for the express and agreed purpose of permitting Burris to come into the company on an equal footing with the two Lannons; that to do this it was necessary to lessen the value of the shares of the company, and the bond issue had precisely that effect, as the value so withdrawn from the shares immediately attached to the bonds. Under these circumstances it may well be held that the bonds were sold at approximately par value, in so far as the corporation itself is concerned, and it follows inevitably that the claim that the bonds were issued without consideration has no support at all in fact.

It is also contended that the board of directors, acting apart from, and without regard for the corporation or the interests of the stockholders, procured the issuance of the bonds and distributed them among themselves. While it may be conceded that the bonds were all distributed to the directors, it is likewise true that the directors were all of the stockholders; in other words, all of the stockholders were directors, and every share of the stock of the corporation was represented at the stockholders meeting at which their issuance was authorized, and also at the directors meeting at which instructions were given to issue the bonds as authorized. The bonds were issued for the purpose of carrying out the change of ownership of the stock as heretofore detailed. It is elementary that by the unanimous consent of all stockholders a solvent corporation may make any disposition of the company assets they desire, in the absence of fraud upon creditors. Cook on Corporations, 6th Ed., sec. 730; Great Western M. & M. Co. v. Harris, 128 Fed. 321, 63 C. C. A. 51. A corporation has no such separate entity as will permit it to act counter to the unanimous desire of its stockholders. Cook on Corporations, 6th Ed., sec. 730, and note, p. 2387.

This is not a case where the board of directors have dealt with the corporation or with others for their individual profit. It is not a fact that the shares which Burris sought to purchase were property of the company; they were the shares of the Lannons; and the bond issue reduced, ratably, the value of the shares of stock retained by them as well as of those sold to Burris. The loss, if any, was not sustained by the corporation, but by the holders of the shares. By participation in the transaction the shareholders are estopped to deny its legality, and the corporate entity cannot act for them, Home Ins. Co. v. Barber, 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. 716.

The entire body of stockholders acquiesced and participated in the transaction. They are accordingly bound by it, and their transferees are also bound. In Gumaer v.

*Cripple Creek Tunnel Transportation & Mining Co.*, 40 Colo. 1, 90 Pac. 81, 22 Ann. Cas. 781, this court in speaking to this question said, at page 17: "Not only the participating and acquiescing stockholders, but also their transferees, are bound by the participation or acquiescence. The transferee cannot claim to have greater rights than his transferer as regards a generally remedy invalidating the whole transaction. He cannot bring suit in behalf of the corporation and other stockholders against the party or parties participating in the issue, inasmuch as his own title is tainted with the same fraud. Nor can he bring an action against the corporation."

The attempt by the company to avoid foreclosure of the bonds is an attempt to do that which the stockholders cannot do. It is clear that the stockholders have no equitable right to the relief sought, therefore they cannot obtain such relief acting by or through the corporate entity. *Home Ins. Co. v. Barber, supra; Arkansas R. L. T. & C. Co. v. Farmers Co.*, 13 Colo. 587, 22 Pac. 594; *Des Moines Gas Co. v. West*, 50 Iowa 16.

It is to be noted that the present stockholders secured their shares subject to the lien of the bonds, and therefore at a lower figure than would have been possible without such incumbrance. They should not now be permitted to repudiate the indebtedness and so add the value of the bond issue to their shares of stock in the company.

It is undoubted that a solvent corporation may not only dispose of its assets as the stockholders see fit, but it may dispose of its bonds at less than par, provided, of course, no creditor be thereby defrauded. So long as present creditors are not injured, future creditors cannot complain. *Hamilton v. Menominee Co.*, 106 Wis. 352, 81 N. W. 876; *Little v. Garabrant*, 153 N. Y. 661, 90 Hun. 404, 35 N. Y. Sup. 689; *Pusey v. N. J. Co.*, 14 Abb. Pr. (N. S.) 434. Also such corporations, with the unanimous consent of its stockholders, provided no third parties are injured, may issue its bonds for the benefit of individual stockholders. Cook on Corporations, sec. 766; *D'Ooge v. Leeds*, 176 Mass. 558,

57 N. E. 1025.   So far as the facts and the parties are concerned, it is the same as if the present complaining stockholders took their stock in exchange for the bonds in question, and then sought to repudiate the bonds.

It is apparent that the issue of the bonds in question does not fall within the inhibitions of sec. 9, Article XV of the constitution, because those bonds were manifestly issued for a good and valuable consideration paid to the corporation, and in no sense constitutes a fictitious increase of company indebtedness.

We have examined the entire record with the most painstaking care, and fail to discover a syllable of evidence, or anything else contained therein, which shows or tends to show that there is anything in the transaction which is in the slightest tainted, or which did cause or could cause a loss to the company, or which worked or could work it, or any one else, a wrong or injury.   The whole matter seems to have been absolutely free from any indirection, fraud, deceit or wrong doing of which complaint either by the company, or by any original or subsequent stockholder, could or can justly or properly be made or upheld.

The judgment is affirmed.

Decision *en banc*.