No. 13,740.

BOWMAN, TRUSTEE *v.* MELNICK ET AL.

(63 P. [2d] 464)

Decided May 4, 1936.  On rehearing original opinion adhered to
December 28, 1936.

Mr. WILLIAM SCOFIELD, for plaintiff in error.

Mr. R. HICKMAN WALKER, Mr. HARRY A. FEDER, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

A DEMURRER was sustained by the district court to plaintiff's amended complaint, on which he elected to stand, and judgment of dismissal and for costs was entered against him. He appears here as plaintiff in error asking to have the judgment reversed. We will herein refer to him as plaintiff, and to defendants in error as defendants.

The amended complaint in substance alleges that plaintiff was, by the referee in bankruptcy, appointed trustee of the bankrupt estate of the California Meat Company which had been adjudged bankrupt December 20, 1933, upon an involuntary petition; that on and before November 23, 1931, the bankrupt owned and controlled a stock of meats and the fixtures and equipment necessary in its business; that these constituted the entire corporate assets, except the stock in trade; that on the last mentioned date the entire capital stock was owned by defendants, who were the board of directors, and they as such stockholders and directors, in a formal meeting, accepted in behalf of the corporation, a proposition by one Grossman to buy all the assets of the corporation as well as its stock of merchandise. This proposition was for the consideration of $3,000, $1,000 cash, and $2,000 payable $100 monthly, to be secured by a chattel mortgage on the fixtures and equipment—exclusive of the stock in trade—and further secured by a pledge of the capital stock of which Grossman was to become the owner. On the same

day, the defendants resigned as officers and directors, transferred all their stock to Grossman and his associates who thereupon were elected officers and directors. November 23, the new board authorized its officers to execute the note and mortgage of the company to the order of the defendants, and on the same day the corporation executed and delivered the note of the company and chattel mortgage securing payment of the same to the defendants; that January 3, 1933, payments were in arrears, and the new officers, acting for the corporation, executed and delivered to defendants a new chattel mortgage securing payment of $1,783.43, and covering some additional equipment; that a second chattel mortgage in the sum of $1,200 was executed and delivered to defendants covering all of the property last mentioned, to secure defendants on account of delinquent taxes and insurance premiums, unpaid by the corporation; that the reasonable value of the property is $3,000; that the bankrupt corporation received no consideration for the notes and mortgages described, and the sole consideration was the transfer of the capital stock by defendants to Grossman; that the notes and mortgages were made while the company was indebted in large sums of money, and was contemplating the incurrence of other large liabilities, and for that reason, the conveyances were fraudulent and void as to the creditors of the bankrupt company, as well as to plaintiff, its trustee; that at the time of the purchase by Grossman of the capital stock, the company was obligated on a five year lease to pay rent thereafter to fall due, although at that time no rent was due; that in November, 1933, acting under the mortgages, defendants took possession of the property and converted it to their own use; that all of the property, or the money equivalent, passed to plaintiff as trustee and the title remains in him; that the same is, and has been at all times since the taking and conversion, assets belonging to the bankrupt estate; that plaintiff is in constructive possession and entitled to actual possession of such assets as trustee,

314

and that defendants have no right, title or interest therein. The prayer is for possession of the property or for $3,000, its value.

The demurrer was general upon the ground that the complaint as amended did not state sufficient facts to constitute a cause of action, and was argued on the ground that it does not allege that the plaintiff represents creditors who were such at the time of the execution of the chattel mortgages or prior thereto, who were creditors at the time of the commencement of this action; also that it does not allege that the defendants and the bankrupt conspired or agreed to do the things of which complaint is made for the purpose of hindering, delaying or defrauding subsequent creditors, alleged to have been defrauded; and further because there is no allegation that the bankrupt became insolvent at the time of the making of the chattel mortgages on account thereof. The same argument is here presented to support the judgment of the trial court in sustaining the demurrer.

This action purports to attack the validity of the chattel mortgages, and even though it is by a trustee in bankruptcy, the bankruptcy act is not applicable. The solution of the question of whether or not the mortgages are valid, depends upon, and is controlled by, the laws of the state where they were executed.

The question here presented by the amended complaint, is not one of fraudulent intent. It is not a question of whether the trustee of all the bankrupt's creditors represents a particular creditor who was such at the time of the conveyance in question or subsequent thereto; neither is the question of failure to allege that the bankrupt was or became insolvent at the time, and on account, of the transaction important. The real question presented upon the face of the complaint, is: Was the transaction, ipso facto, a fraud upon the then existing creditors and an increase of the liability of the corporation from which it received no benefit?

After historical recital of the transaction, we find the

following pertinent allegation in the amended complaint: "* * * and said chattel mortgages were made while the said bankrupt was indebted in large sums of money and in contemplation of the incurring of other large liabilities, by reason whereof said conveyances were, and each of them is fraudulent and void as to the creditors of said bankrupt, and the plaintiff, as trustee of the bankrupt estate." If the allegation as to the then existing indebtedness is true, the defendants as directors and sole stockholders, are chargeable with knowledge of the existing financial condition of the company. By the transaction, they added nothing to the assets of the indebted corporation, but did increase its liabilities to the amount of the questioned chattel mortgages, and by the transaction they shifted their position from that of stockholders of an involved corporation to that of preferred creditors with a first lien upon the assets of a burdened corporation from which they severed their connections. If the corporation was already burdened with debt, this transaction added to its insolvency so far as general credit, then or thereafter, was concerned. The transaction may have been, and probably was, free of any dishonest intention, but it operated in law as an injury and fraud upon creditors. It is true the chattel mortgages were placed of record and prospective creditors had notice of this indebtedness, but they had no notice that the corporation had not received any benefit from the added indebtedness, and were entitled to believe that it had received a benefit. *In Re Haas Co. (Taylor v. Ziegenhagen)*, 131 Fed. 232. The capital stock investment of defendants in the indebted corporation might have proven to be in jeopardy, but equity and good conscience forbid that they further encumber the assets, rightfully belonging to creditors, for their own individual gain as here disclosed.

The complaint as amended is not subject to the objections raised by the demurrer and urged by defendants, and they should have been overruled. The judgment

therefore is reversed with instructions to reinstate the amended complaint. Further proceedings, if any, should be in accordance with the views herein expressed.

MR. JUSTICE BUTLER concurs in the reversal of judgment for reasons stated in MR. JUSTICE YOUNG's concurring opinion filed herein.

MR. JUSTICE YOUNG specially concurs.

MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK dissent.

MR. JUSTICE YOUNG, specially concurring.

Inasmuch as I now concur in the opinion of Mr. Justice Holland to which I formerly dissented I deem it proper that I state the additional reasons that impel me to such concurrence.

The reasons assigned for the conclusion in that opinion are substantially the same as those given for a similar holding in the case of *In Re Haas Co. (Taylor v. Ziegenhagen)*, 131 Fed. 232, decided by the Circuit Court of Appeals for the 7th Circuit and in which the facts were almost identical with those in the case at bar.

From an investigation suggested by the case of *Pueblo Foundry Co. v. Lannon*, 68 Colo. 131, 187 Pac. 1031, cited by defendants in error in their brief, I am convinced that section 2261 C. L. 1921, which is an enactment verbatim of part of section 9 of article 15 of the Colorado Constitution, requires a reversal of the judgment. If that statute and constitutional provision are applicable to the case at bar, as I believe they are, we are not concerned with the soundness of the reasons given for the enactment of the one and adoption of the other. The makers of the Constitution and the legislature were satisfied with such reasons and we must be. The statutory section is as follows: "No corporation shall issue stocks or bonds except for labor done, services performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void."

The foregoing statute and constitutional provision have been held applicable to cases involving the original issue of stock where no consideration was paid therefor, such an issue being held fictitious under the statute. In the case of *Arkansas River, Land, Town & Canal Co. v. Farmers' Loan & Trust Co.*, 13 Colo. 587, 22 Pac. 954, in an opinion by Pattison, Commissioner, it was said: "Section 9 of article 15 of the constitution provides that 'no corporation shall issue stocks or bonds, except for labor done, services performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void.' This constitutional provision has been embodied in sections 251 and 340 of the statute relating to corporations. The meaning of the language of the Constitution is clear and unmistakable. If stocks or bonds be issued, 'except for labor done, services performed, or money or property actually received,' such issue is in direct violation of the Constitution and the statutes, and ipso facto invalid. * * *

"On the contrary, by the express allegations of the complaint it appears that they acquired the stock, not only in fraud of the rights of the corporation, but in express violation of the constitutional mandate of the state, and of the provisions of the law under which the corporation was organized. The stock held by them is fictitious, within the meaning of the constitution, and no rights can be predicated upon it, either in law or equity. The bill was therefore properly dismissed as to them."

*Frink v. Carman Co.*, 97 Colo. 211, 48 P. (2d) 805, is to the same effect.

Reference is made to section 2261, supra, in *Pueblo Foundry Co. v. Lannon, supra,* an action to foreclose a mortgage securing the payment of bonds, in which it was held that as the bonds issued ratably to stockholders by the consent of all the stockholders, although without consideration they were valid as against attack by stockholders who became such by purchase of stock from stockholders who had participated in the authorization of the

bond issue. This holding was predicated on the ground of estoppel. The rights of creditors were not involved in that case. The court said: "This is not a case where the board of directors have dealt with the corporation or with others for their individual profit. It is not a fact that the shares which Burris sought to purchase were property of the company; they were the shares of the Lannons; and the bond issue reduced, ratably, the value of the shares of stock retained by them as well as of those sold to Burris. The loss, if any, was not sustained by the corporation, but by the holders of the shares. By participation in the transaction the shareholders are estopped to deny its legality, and the corporate entity cannot act for them. *Home Ins. Co. v. Barber,* 67 Neb. 644, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. 716.

"The entire body of stockholders acquiesced and participated in the transaction. They are accordingly bound by it, and their transferees are also bound. In *Gumaer v. Cripple Creek Tunnel Transportation & Mining Co.,* 40 Colo. 1, 90 Pac. 81, 22 Ann. Cas. 781, this court in speaking to this question said, at page 17: 'Not only the participating and acquiescing stockholders, but also their transferees, are bound by the participation or acquiescence. The transferee cannot claim to have greater rights than this transferer as regards a general remedy invalidating the whole transaction. He cannot bring suit in behalf of the corporation and other stockholders against the party or parties participating in the issue, inasmuch as his own title is tainted with the same fraud. Nor can he bring an action against the corporation.' "

If the attack on the mortgage in the case at bar were being made by the stockholders, *Pueblo Foundry Co. v. Lannon, supra,* would be in point, but that case is distinguishable from the case before us in that the attack here is made by a trustee representing creditors, either existing at the time of the mortgage or subsequent, and whether one or the other or both is not material.

For a general discussion of the effect of constitutional

provisions and statutes similar to ours see 7 R. C. L., pp. 596-598, §§590, 591 and 592.

In the case of a fictitious issue of stock a stockholder may be compelled to pay into the corporation for the benefit of its creditors what he should have paid for his stock; in the case of a fictitious indebtedness he should be compelled to leave in, or if taken out, to put back what should have remained there for the benefit of creditors.

For the reasons stated I am of the opinion that the judgment should be reversed. I am authorized to state that Mr. Justice Burke concurs in this specially concurring opinion, and that Mr. Justice Butler concurs herein solely on the ground that the transaction involved is void under section 9 of article 15 of the Constitution and section 2261 C. L. 1921.

MR. JUSTICE BOUCK, dissenting.

The majority opinion cites a single authority, *In Re Haas Co. (Taylor v. Ziegenhagen)* (1904), 131 Fed. 232, 65 C. C. A. 218. That case arose in the Northern district of Illinois and was decided by the Circuit Court of Appeals of the Seventh Circuit without mentioning any authority whatever. It thus omitted citing the leading case, decided in 1880 by the United States Supreme Court, with which it is in sharp and unexplainable conflict; *Graham v. Railroad Co.,* 102 U. S. 148, 26 L. Ed. 106. That decision by the federal judicial authority of last resort has remained unquestioned and has been frequently approved. It is unequivocally followed in *Sweet v. Lang* (1926), 14 F. (2d) 762, decided by the Circuit Court of Appeals of the old Eighth Circuit where Circuit Judge Lewis, now presiding judge in the Tenth Circuit, says:

"The receiver stands in a representative capacity— for the corporation, its stockholders and creditors. He may sue and recover for the corporation whenever it could have done so; but, if there be no such right in it, he, of course, cannot assert in its behalf a right which

does not exist. Its officers, directors, and stockholders approved, authorized, and ratified by long course of dealing all of the transactions of which the receiver now complains. We know of no rule or principle that would permit it now to repudiate those transactions and require restitution of the payments. In *Graham v. La Crosse & M. R. Co.*, 102 U. S. 148, 26 L. Ed. 106, the court, after observing the well-settled rule that an individual, being solvent and without intent to defraud creditors, may dispose of his property as he pleases, for an inadequate consideration, or even by voluntary conveyance, held that a corporation has the same rights. On page 160 the court said:

" 'It is contended, however, by the appellant that a corporation debtor does not stand on the same footing as an individual debtor; that, whilst the latter has supreme dominion over his own property, a corporation is a mere trustee, holding its property for the benefit of its stockholders and creditors; and that, if it fail to pursue its rights against third persons, whether arising out of fraud or otherwise, it is a breach of trust, and creditors may come into equity to compel an enforcement of the corporate duty. This, as we understand, is the substance of the position taken. We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the nature of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true; but, in law, it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its estate is the same, its interest is the same, its possession is the same.' "

This principle, thus applied by the United States Supreme Court to corporations, as it had been uniformly applied to individuals, remains unquestioned.

Numerous decisions of our own Supreme Court have been in full harmony with the principle.

The majority opinion is without support in this jurisdiction, and the judgment below should be affirmed.

However, the concurring opinion of Justice Young, in which Justices Butler and Burke concur, injects an entirely new factor into the case without request or citation or argument from either side, namely, section 9 in Article 15 of the Colorado Constitution and a corresponding statute found in C. L. '21, section 2261. As these provisions were mentioned neither in the district court nor by the briefs filed in this court, and they are not pleaded, it seems to me that this issue is not properly before us for decision. Even when properly raised, such an issue would seem to call for full discussion and elucidation by counsel on both sides before a conclusion is reached. The issue would of course involve many debatable questions. For example: Is the constitutional provision self-executing? Is any penalty imposed by the statute? If, as here, these provisions do not include any provision for some penalty, are they not purely directory? Who is entitled to invoke these provisions when, as here, they are not made the subject of affirmative pleading? Who is entitled to invoke these provisions even though they are affirmatively pleaded? And—most important of all—does the word "void" in those provisions mean absolutely void or simply voidable?

I take it that this court—in accordance with a well-recognized rule of procedure which has become a part of our substantive law—will decline to decide a purely private controversy on a theory not presented by counsel to the lower court, which naturally and rightfully proceeded to and did try the case according to the theory on which counsel for both parties obviously intended the case to be tried.

What I have said inevitably requires, I think, the conclusion that the judgment of the district court should be affirmed for the reasons stated.

Suppose, however, that the constitutional and statutory issue raised by the concurring judges could be deemed

properly introduced into the case. Nevertheless the judgment should be affirmed.

Section 9 in Article 15 of our state Constitution says: "No corporation shall issue stocks or bonds, except for labor done, service performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void.   *   *   *"

The word "void" may mean either "void" or "voidable," and, where we are concerned with questions of purely private right, as in the present case, "voidable" is preferred.   2 Sutherland on Statutory Construction (2d Ed. by Lewis) 775 [section 400].

Since the majority opinion's only citation is a federal case I cite here in support of the text just mentioned the following later federal cases: *Johansen Bros. Shoe Co. v. Alles,* 197 Fed. 274, 277-8, 116 C. C. A. 636, 639-640; *Westerlund v. Black Bear Mining Co.* (Colorado, old Eighth Circuit, per Circuit Judge Walter H. Sanborn), 203 Fed. 599, 611, 121 C. C. A. 627, 639.   In the latter case Judge Sanborn said:

"Courts take judicial cognizance of the fact that legislatures use the word 'void' in statutes in the sense of utterly void so as to be incapable of ratification, and in the sense of voidable by those alone whose rights are infringed without express discrimination, so that resort must be had to settled rules for the interpretation of statutes in each case to determine in which sense the legislature intended to use it.   One of these rules is that an act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries."

Where possession has been obtained by the mortgagee under a voidable mortgage before a creditor takes steps

against it, the attack comes too late. *Johansen Bros. Shoe Co. v. Alles, supra.* That is the situation disclosed in the present record.

The principles of interpretation which apply to legislative acts apply equally to constitutional provisions. 12 C. J. 699, section 42; *State v. Stewart,* 57 Mont. 397, 402, 188 Pac. 904, 906; *Perry County Tel. & Tel. Co. v. Public Service Com'n,* 265 Pa. 274, 278, 108 Atl. 659, 660; *Zancanelli v. Central Coal & Coke Co.,* 25 Wyo. 511, 550, 173 Pac. 981, 991.

The record shows that the case at bar is exactly equivalent to what it would have been if the Melnicks, defendants in error, who as sole stockholders, directors, and officers were to all intents and purposes the corporation in question, had sold to the Grossman group all the property of their business concern subject to a subsisting chattel mortgage which belonged to them as part of the purchase price. The Melnicks received in exchange for $3,000 worth of property only $1,000 in cash with security on the property sold for the $2,000 balance. Let it be remembered: The amended complaint does not allege that the plaintiff trustee in bankruptcy represents a single creditor who was such when the chattel mortgage was placed upon the property; in other words, so far as appears, the debts due the present creditors were all incurred after the execution of the subsisting mortgage and subject to it. No fraud is alleged, nor is it alleged that the mortgage was made when the corporation was insolvent, or that the mortgage caused the corporation's insolvency. Not only so, but it is affirmatively shown in the ninth paragraph of the amended complaint that one of the chattel mortgages under which the mortgagees took possession was in every sense a proper corporate mortgage, executed for a valid consideration passing to the corporation.

In the circumstances, and in view of the facts herein, and in the light of all the authorities I think the district

court judgment should be affirmed. Since the majority are for reversal, I respectfully dissent.