2014 COA 104

**IN RE the ESTATE OF FOILES, deceased.**

**Gregory Kevin Foiles, Appellant,**

v.

**Larry B. Foiles, Appellee.**

**Court of Appeals No. 12CA2436**

Colorado Court of Appeals, Div. III.

Announced August 14, 2014

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Berenbaum Weinshienk, PC, Ellen Elizabeth Stewart, Gary M. Kramer, Denver, Colorado, for Appellant.

Fairfield & Woods, P.C., Lee Katherine Goldstein, Denver, Colorado, for Appellee.

Opinion by JUDGE TERRY

¶ 1  In this probate action concerning the Clyde Foiles Trust and the Ruth Foiles Trust (the trusts), appellant, Gregory Kevin Foiles, who is a beneficiary of the trusts, appeals the judgment entered in favor of trustee and co-beneficiary Larry B. Foiles. We reverse the judgment and remand for further findings of fact and conclusions of law.

¶ 2  This case presents an issue of first impression in Colorado. We hold that, in the absence of a trust provision that would allow ratification by a co-trustee of otherwise invalid actions of a trustee, only the consent of all the beneficiaries, with full capacity to give such consent and full knowledge of the relevant facts, could ratify an action of a trustee that is in violation of the express terms of a trust.

## I.  Background

¶ 3  Ruth and Clyde Foiles (the Settlors) were the parents of Larry Foiles and the grandparents of Gregory Foiles. Settlor Ruth Foiles created the Ruth Foiles Trust, over which she retained sole decisionmaking authority while she remained a trustee. Settlor Clyde Foiles created the Clyde Foiles Trust. After his death, the trustees of the Clyde Foiles Trust were Ruth Foiles, Larry Foiles, and the Farmers State Bank of Fort Morgan (the Bank).

¶ 4  The corpus of each trust consisted of the Settlor's one-half interest in property held jointly with the Settlor's spouse, as well as certain property held separately by the Settlor.

¶ 5  Larry Foiles, together with Larry's two children and his nephew Gregory Foiles, are all beneficiaries of the trusts. Despite the inherent conflict of interest in naming Larry Foiles simultaneously as a co-beneficiary and co-trustee of the trusts, the Settlors specifically intended that he serve as co-trustee. *See* § 15–1.1–105, C.R.S. 2013 ("A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."); § 15–1.1–106, C.R.S. 2013 ("If a trust has two or more beneficiaries, the trustee shall act impartially in investing and managing the trust assets, taking into account any differing interests of the beneficiaries.").

¶ 6  As more fully explained below, the Clyde Foiles Trust prohibited Larry Foiles from exercising powers as trustee that were directly or indirectly for his own benefit, and required that any such actions be taken solely by the Bank.

¶ 7  At trial, Gregory Foiles contested two transactions undertaken at least in part by

Larry Foiles, acting as trustee of the Clyde Foiles Trust. In 1996, an exchange of real property (1996 Section 1031 Exchange) was made pursuant to 26 U.S.C. § 1031 (2012). In that exchange, the trusts transferred farm property out of the trusts and replaced it with an apartment property in Denver, Colorado (the Emerson property).

¶ 8 In 2001, a second Section 1031 exchange was made (2001 Section 1031 Exchange). Larry Foiles had a contract to purchase in his own name a property known as the Hudson Farm property. Through a series of transfers, the Hudson Farm property became property of the trusts, and the Emerson property became the sole property of Larry Foiles.

¶ 9 Ruth Foiles approved these transactions as trustee of the Ruth Foiles Trust, and the validity of the transactions under her trust is not at issue in this appeal. She died before trial of this matter.

¶ 10 However, Gregory Foiles alleged that the transactions were a breach of Larry Foiles's fiduciary duty under the Clyde Foiles Trust. Under the terms of both trusts, when the trusts terminated, Larry Foiles was to receive all farm property held in the trusts, while the co-beneficiaries (including Gregory Foiles) were to receive all nonfarm property.

¶ 11 As relevant here, Gregory claimed that (1) the 2001 Section 1031 Exchange worked to his detriment, because he and the beneficiaries other than Larry should have been able to inherit the Emerson property (a non-farm property) at trust termination, but could not do so because it had been removed from the trust corpus and conveyed to Larry as part of the exchange; and (2) the transactions ultimately benefited Larry, who stood to inherit the Hudson Farm property at trust termination, and who received conveyance of the Emerson property as part of the 2001 Section 1031 Exchange.

¶ 12 After a bench trial, the trial court found that Larry Foiles had not breached his fiduciary duty with respect to either of the Section 1031 Exchanges. The court ordered termination of both trusts, and directed the distribution of the trust assets.

¶ 13 On appeal, Gregory Foiles does not contest the trial court's ruling that the 1996 Section 1031 Exchange was not a breach of Larry Foiles's fiduciary duty. He does contest its ruling that the 2001 Section 1031 Exchange was not a breach of fiduciary duty. He also asserts other errors, which we address at the end of this opinion.

## II. Summary of Our Holding

¶ 14 The trial court's ruling that the 2001 Section 1031 Exchange was not a breach of Larry Foiles's fiduciary duty relied primarily on two findings: (1) the Bank, as co-trustee of the Clyde Foiles Trust, ratified that transaction; and (2) the Emerson property was to be considered farm property because it was brought into the trust corpus by exchanging it for farm property.

¶ 15 The court erred in ruling that the Bank's ratification of the 2001 Section 1031 Exchange precluded Gregory Foiles's breach of fiduciary duty claim. Moreover, the trial court failed to recognize that Gregory Foiles had established a prima facie case of breach of fiduciary duty as to the Clyde Foiles Trust. *See In re Estate of Heyn*, 47 P.3d 724, 726 (Colo. App. 2002) (a plaintiff need only demonstrate a fiduciary relationship and a transfer to or use of trust property by a fiduciary to raise a rebuttable presumption and establish a prima facie case of breach of fiduciary duty).

¶ 16 Because Gregory Foiles met his burden of establishing a prima facie case, Larry Foiles was required to go forward with evidence that the transaction was fair and reasonable. *Id.* Arguably, the trial court's finding that the Emerson property was to be treated as farm property was relevant to a defense that the transaction was fair and reasonable. However, because the trial court began with the incorrect premise that the Bank's ratification of the 2001 Section 1031 Exchange precluded a breach of fiduciary duty claim, it must make new factual findings and legal conclusions, starting from the premise that Gregory Foiles established a prima facie case of breach of fiduciary duty as to the Clyde Foiles Trust in connection with that transaction.

¶ 17 Because the other issues raised on appeal depend on the trial court's decision on remand, we defer ruling on those issues until after the case has been recertified to this court after remand.

### III. Standards of Review

¶ 18 Gregory Foiles challenges the trial court's factual findings and legal conclusions.

¶ 19 It is for the trial court, as trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *In re Estate of Breeden v. Gelfond*, 87 P.3d 167, 172 (Colo. App. 2003). When reviewing the sufficiency of the evidence to support a judgment, we must view the evidence in the light most favorable to the prevailing party. *Estate of Heyn*, 47 P.3d at 726. The trial court's findings will not be overturned on appeal unless they are so clearly erroneous as to find no support in the record. *Estate of Breeden*, 87 P.3d at 172. When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result. *Id.*

¶ 20 In construing the terms of a written instrument, including the trust documents in issue here, our review is de novo. *Casey v. Colo. Higher Educ. Ins. Benefits Alliance Trust*, 2012 COA 134, ¶ 20, 310 P.3d 196, 201–02.

### IV. Discussion

#### A. The 2001 Section 1031 Exchange

¶ 21 Gregory Foiles argues that the 2001 Section 1031 Exchange was a breach of Larry Foiles's fiduciary duty under the Clyde Foiles Trust. We reverse the trial court's ruling that Larry Foiles did not breach his fiduciary duty in connection with that transaction, and remand for further findings of fact and conclusions of law on that claim.

#### 1. Failure to Preserve Claim That 2001 Section 1031 Exchange Was Void

¶ 22 As an initial matter, we note that Gregory Foiles asserts on appeal that the transaction was "void" because, contrary to the terms of the Clyde Foiles Trust, the transaction was not executed by the Bank as co-trustee, and, in his Opening Brief, he asks us to "[d]etermine that the 1031 Exchange was void." However, as the trial court correctly ruled, a court declaration that the transaction was "void" could affect the rights of persons or entities that were not parties to the litigation. But Gregory Foiles had not included in his pleadings in that court a request to declare the transaction void, and had not named as parties all necessary persons and entities whose interests might be affected by such a declaration. *See* C.R.C.P. 19(a) (regarding joinder of parties in whose absence complete relief cannot be accorded among those already parties); *Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Estates Owners Ass'n*, 214 P.3d 451, 453–54 (Colo. App. 2008) (in general, all parties having an interest in subject property must be joined); *In re Estate of Masden*, 24 P.3d 634, 636–37 (Colo. App. 2001) (probate proceeding was not appropriate forum to resolve dispute regarding ownership of property; citing C.R.C.P. 105(a), C.R.C.P. 57(c)). We therefore see no error in the trial court's refusal to declare that transaction void, and we will not make any such declaration here.

¶ 23 There has been historic confusion about the use of the terms "void" and "voidable." *See, e.g.,* Jesse A. Schaefer, Comment, *Beyond a Definition: Understanding the Nature of Void and Voidable Contracts*, 33 Campbell L. Rev. 193, 203–04 (2010) (noting that courts have used terminology imprecisely in determining whether a contract or other legal act is void or voidable).

¶ 24 A document that is void is treated " 'as if it never existed.' " *Id.* at 209 n.56 (quoting *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002)); *see also Delsas v. Centex Home Equity Co.*, 186 P.3d 141, 144 (Colo. App. 2008) (" '[T]he distinction between void and voidable deeds becomes highly important in its consequences to third persons, "because nothing can be founded upon a deed that is absolutely void, whereas from those which are only voidable, fair titles may flow." ' ") (quoting in part *Medlin v. Buford*, 115 N.C. 260, 20 S.E. 463, 463 (1894)).

¶ 25 In contrast, a voidable document is operative until it is set aside by a court. *See Delsas,* 186 P.3d at 144.

¶ 26 Like the trial court, we lack jurisdiction over any absent parties who might be affected by voiding the transaction. We construe the contention of voidness as a claim that the transaction was merely voidable based on breach of fiduciary duty, and we proceed to address whether Gregory Foiles established a prima facie case of breach of fiduciary duty. *See Shepler v. Whalen,* 119 P.3d 1084, 1088 (Colo. 2005) ("[A]lthough section 38–10–117 provides that conveyances made with intent to hinder, delay, or defraud creditors 'shall be void,' the statute has been interpreted to mean the conveyance is voidable rather than void." (citation omitted)); *Bowman v. Melnick,* 99 Colo. 311, 322–23, 63 P.2d 464, 469 (1936) ("[A]n act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries." (internal quotation marks omitted)); *see also Ockey v. Lehmer,* 189 P.3d 51, 58 (Utah 2008) (a trustee's violation of fiduciary duty is voidable only, and capable of ratification); *Wheeler By & Through Wheeler v. Mann,* 763 P.2d 758, 760 (Utah 1988) (absent authorization from a court with jurisdiction over the administration of the trust or consent of the beneficiaries, any transaction involving self-dealing by a trustee is voidable by the beneficiaries, regardless of any loss suffered by the trust estate, the payment of valuable consideration, or the existence of good faith); *Hallin v. Hallin,* 228 Wis.2d 250, 596 N.W.2d 818, 824–25 (App.1999) (contract made in violation of trustee's fiduciary duty was voidable but was ratified by beneficiary).

2. Findings of Fact Regarding Breach of Fiduciary Duty Claim

¶ 27 The following findings by the trial court are pertinent to our review of Gregory Foiles's claim of breach of fiduciary duty.

¶ 28 The trial court found that there was no credible evidence that

- any trustee of the Clyde Foiles Trust was guilty of bad faith;
- the Bank disapproved of the 2001 Section 1031 Exchange; or
- there was a breach of loyalty "associated with the failure to keep the beneficiaries advised of the 2001 [Section] 1031 land exchange."

Because these findings depend on the court's assessment of the credibility of witness testimony, we must defer to them. *Lawry v. Palm,* 192 P.3d 550, 558 (Colo. App. 2008).

¶ 29 The court also found that the Bank had approved the 2001 Section 1031 exchange, and, although the Bank's senior vice president, David Ohman, gave inconsistent testimony about the transaction, there is record support for this finding. *See People v. Jones,* 191 Colo. 110, 111–12, 551 P.2d 706, 707 (1976) (it is the trial court's role, as finder of fact, to resolve inconsistencies in the testimony). Though he initially testified that the Bank did not participate in the transaction, he later testified, "The bank ... reviewed [the 2001 Section 1031 Exchange transaction] and consented to it." It is uncontested that the Bank listed the Hudson Farm (which had been exchanged in 2001 for the Emerson property) as an asset of the trusts.

¶ 30 Moreover, Larry Foiles testified that, before the closing of the 2001 Section 1031 Exchange transaction, all the documents related to the purchase of the Hudson Farm and the 2001 Section 1031 Exchange were sent to Ohman, and that Ohman had full knowledge of the transaction before it occurred.

¶ 31 Thus, the court's finding that the bank approved the 2001 Section 1031 Exchange is supported by the record, and we will not disturb it on appeal. Based on that finding, the trial court concluded that the Bank had ratified the transaction.

3. Whether the Co–Trustee's Ratification Precludes a Breach of Fiduciary Duty Claim

¶ 32 Apparently based on its findings that Settlor Ruth Foiles approved, and the Bank ratified, the 2001 Section 1031 Ex-

change, the trial court found that Larry Foiles did not breach his fiduciary duty in undertaking that exchange. We conclude that this ruling contravenes the express terms of the Clyde Foiles Trust, and is in error.

### a. The Pertinent Trust Provision

¶ 33 The Clyde Foiles Trust contains the following provision pertinent to our analysis:

The Settlor desires to make it clear that notwithstanding any of the general powers conferred upon a trustee, no individual trustee shall exercise or join in the exercise of such powers for his or her own benefit, directly or indirectly. Whenever ... the participation in income or principal of a beneficiary who is also a trustee is being considered or may be affected by other action under consideration, all decisions shall be made exclusively and solely by [the Bank].

¶ 34 As Gregory Foiles asserts, the 2001 Section 1031 Exchange would potentially benefit trustee Larry Foiles by allowing him to transfer a property that was not a farm property (the Emerson property) out of the trust and to himself, and, in exchange, to transfer into the trust farm property, which Larry would be entitled to receive on trust termination. Therefore, under this provision of the Clyde Foiles Trust, Larry Foiles was prohibited from participating in the 2001 Section 1031 Exchange because it was "directly or indirectly" for his own benefit, and only the Bank, as corporate trustee, could undertake that transaction. Though it is undisputed that Ruth Foiles had the ability to approve the transaction—and did so—under the terms of her own trust, the Clyde Foiles Trust owned a one-half interest in the affected property, and so the Bank was required to undertake the transaction in order for it to be validly exercised under his trust.

### b. Analysis

¶ 35 We asked the parties to provide supplemental briefing on the following issues:

(1) Can the after-the-fact consent of a co-trustee, to a transaction that would contravene the terms of a trust agreement if not conducted by the co-trustee, constitute ratification of the transaction?

(2) If the answer to question number 1 is "yes," can the after-the-fact ratification by a co-trustee cure non-compliance with the terms of the trust agreement in the absence of ratification by the trust beneficiaries?

¶ 36 We conclude that, given the absence here of a trust provision that would allow ratification by a co-trustee of otherwise invalid actions of a trustee, only the consent of all the beneficiaries, with full capacity to give such consent and full knowledge of the relevant facts, could ratify an action of a trustee that was in violation of the terms of the Clyde Foiles Trust.

¶ 37 Under the circumstances presented here, because Larry Foiles's undertaking of the 2001 Section 1031 Exchange violated the terms of the trust, the Bank, as co-trustee, could not validly ratify that action. Under the terms of the trust, only the Bank would have been authorized to undertake such a transaction.

¶ 38 Larry Foiles has cited authorities that permit ratification of actions of a co-trustee where the acting co-trustee was (at least under certain circumstances) empowered to act for the trust (such as with the consent of the other co-trustees). *See W.A.K. ex rel. Karo v. Wachovia Bank, N.A.,* 712 F.Supp.2d 476, 485 (E.D. Va. 2010); *Wyman v. Wyman,* 208 Mont. 57, 676 P.2d 181, 184–85 (1984); *Gleason v. Elbthal Realty Trust,* 122 N.H. 411, 445 A.2d 1104, 1105 (1982); *In re Estate of Farley,* 186 Misc.2d 355, 717 N.Y.S.2d 500, 502 (N.Y. Sur. 2000); *Deviney v. Lynch,* 372 Pa. 570, 94 A.2d 578, 581 (1953).

¶ 39 But he has cited no authorities addressing the circumstances here, where the trustee who took the action (Larry Foiles) was *prohibited* from acting under the terms of the trust, and only his co-trustee had authority to so act. We have found no authorities indicating that a co-trustee may ratify an action of a trustee that violates the terms of the trust.

¶ 40 Our conclusion that ratification by a co-trustee is no defense under such circum-

stances is grounded on the following authorities indicating that only the beneficiaries of the trust, with full capacity to act and full knowledge of the facts, can ratify otherwise invalid acts of a trustee:

- *Heller v. First Nat'l Bank,* 657 P.2d 992, 998 (Colo. App. 1982), established that, where a beneficiary, with full capacity and full knowledge of the facts, consents to an action by the trustee, the beneficiary may not thereafter contend that the act was a breach of trust.

- In *Beyer v. First Nat'l Bank,* 843 P.2d 53, 58 (Colo. App. 1992), it was held that, if all beneficiaries of a trust are fully informed and all consent to an investment strategy that deviates from traditional investment practices or objectives, no breach of trust has occurred.

- *Beyer,* 843 P.2d at 61, quotes with approval the Restatement (Second) of Trusts § 216 cmt. k (1959), which states: " 'Since the trustee is in a fiduciary relation to the beneficiary, [the trustee] should inform the beneficiary of [the beneficiary's] rights and of the material facts affecting a transaction which is a deviation from the terms of the trust, insofar as the trustee knows or should know these facts.' "

- 3 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, *Scott & Ascher on Trusts* § 24.21.2, at 1760 (5th ed. 2007), states, "the consent of one of several beneficiaries to an act or omission of the trustee ordinarily does not preclude the other beneficiaries from holding the trustee liable for a breach of trust." *See also* Restatement (Third) of Trusts § 97 cmt. c (2007) ("The consent, ratification, or release by one or more of the beneficiaries of a trust ordinarily ... does not preclude other beneficiaries of the trust—that is, nonconsenting present or future beneficiaries—from holding the trustee liable for a breach of trust.").

- In *Mooney v. Madden,* 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (1993), the court held: "A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement.... To be binding, beneficiary consent must be by all of the beneficiaries."

- In *Citibank, N.A. v. Wynmark Trust,* No. 92 CIV. 2305(RPP), 1993 WL 78069, at *6 (S.D.N.Y. Mar. 17, 1993), the court held: "The power to ratify the unauthorized act of a trustee, however, generally belongs to the competent beneficiaries of a trust, and not to the trustee or his or her successor."

¶ 41   The Kansas Supreme Court in *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.,* 250 Kan. 754, 863 P.2d 355, 362 (1992), applied a since-repealed statute stating, "[a] trustee cannot ratify an act that is in violation of the trust agreement because such an act is void." There is no such statute in Colorado. But other authorities indicate that a third party cannot join with a trustee in a breach of trust, and may be liable to the trust beneficiaries for his or her actions in participating in such a breach. *See* George Gleason Bogert & George Taylor Bogert, *The Law Of Trusts And Trustees* § 901, at 304 (1995) ("[A trust] beneficiary, as equitable owner of the trust res[,] has the right that third persons shall not knowingly join with the trustee in a breach of trust. One acting with a trustee in performing an act that such person knows or should know is a breach of trust becomes a participant in the breach and subject to liability for any damages that result.") (collecting cases).

¶ 42   If third parties may be liable for aiding a trustee in breaching a trust, it seems a short leap to conclude that a co-trustee may not ratify an action of a trustee that violates the trust terms.

¶ 43   We conclude that the above-cited Colorado precedents and other authorities establish that, in the absence of a trust provision allowing ratification by a co-trustee of otherwise invalid actions, only the consent of all beneficiaries who have proper capacity and are fully informed of the facts can ratify an action taken in violation of a trust agreement, and that ratification by a co-trustee is insufficient.

¶ 44 Larry Foiles has not pointed us to evidence in the record that would show that co-beneficiary Gregory Foiles had full, if any, knowledge of the facts or the consequences of the 2001 Section 1031 Exchange, or that he consented to it. Larry's own consent to the transaction—given his status as a simultaneous trustee and co-beneficiary—does not constitute ratification on the part of Gregory and does not preclude Larry from being held liable for breach of the trust terms. *See* Restatement (Third) of Trusts § 97 (2012) (the consent to or ratification of a breach of trust, or the granting of a release, by one or more of the beneficiaries does not preclude trustee from being held liable to other beneficiaries for the breach, insofar as their interests are affected); *see also* Bogert, *The Law Of Trusts And Trustees* § 941, at 524–25 (one beneficiary cannot consent for another beneficiary to a breach of trust, nor can a majority of the beneficiaries bind the minority by a request or consent that a breach of trust be performed).

¶ 45 Gregory Foiles established that Larry Foiles, as trustee, transferred property from the trust to himself in the 2001 Section 1031 Exchange. Therefore, under *Estate of Heyn,* Gregory established a prima facie claim that Larry breached his fiduciary duty. 47 P.3d at 726.

¶ 46 The trial court erred in ruling that ratification by the Bank precluded Gregory Foiles's breach of fiduciary duty claim. We therefore reverse and remand the matter to the trial court to make additional findings as to whether Larry Foiles met his burden to go forward with some evidence that the 2001 Section 1031 Exchange was fair and reasonable, *id.* and, ultimately, whether Larry Foiles is liable for breach of fiduciary duty in connection with that transaction. If the court finds such liability, it shall proceed to consider and award any resulting damages that have been proved.

## B. Other Issues Raised on Appeal

¶ 47 In addition to his contention that the trial court improperly ruled on his breach of fiduciary duty claim, Gregory Foiles also raises the following contentions on appeal:

(1) Larry Foiles should be surcharged the amount of the farm management fees paid to him after 2002. *See* § 15–10–504(2)(a), C.R.S. 2013 (If a court "determines that a breach of fiduciary duty has occurred or an exercise of power by a fiduciary has been improper, the court may surcharge the fiduciary for any damage or loss to the estate, beneficiaries, or interested persons."). This argument rests on the premises that the 2001 Section 1031 Exchange was invalid and the trust should not have acquired the Hudson Farm property in that exchange, and thus Larry Foiles would not be entitled to receive payment of farm management fees under the terms of the Clyde Foiles Trust.

(2) Larry Foiles should be assessed all attorney fees incurred in connection with water court litigation. This argument also rests on the premises that the 2001 Section 1031 Exchange was invalid and the trust should not have acquired the Hudson Farm property in that exchange, and thus Larry Foiles would not be entitled to receive any attorney fees he expended in connection with water court litigation concerning water rights for that farm.

(3) Gregory Foiles should be awarded his attorney fees incurred in this action. Under *Heller,* where a trust beneficiary establishes a claim of breach of fiduciary duty by a trustee, the court has discretion to award to the beneficiary reasonable attorney fees incurred in that litigation. 657 P.2d at 999.

¶ 48 Resolution of each of these issues will depend on the trial court's decision on remand regarding the merits of the breach of fiduciary duty claim. Therefore, on remand, the trial court, after making findings of fact and conclusions of law as to whether Gregory Foiles prevailed on his breach of fiduciary duty claim, is directed to make additional findings on the merits of each of these three contentions.

## C. Appellate Attorney Fees

¶ 49 Finally, Gregory Foiles argues that he should be awarded his attorney fees incurred in this appeal. As noted above, under *Heller,* a court has discretion to award

to the beneficiary reasonable attorney fees incurred in litigation where a trust beneficiary establishes that a trustee has committed a breach of fiduciary duty. The decision of the trial court on remand of this action will affect the determination of whether such fees should be awarded. We therefore defer ruling on this request for attorney fees until after remand and recertification of the appeal to this court.

## V. Conclusion

¶ 50 The judgment is reversed. The case is remanded to the trial court to make the findings of fact and conclusions of law specified herein, after which the appeal shall be recertified to this court.

Dailey and Roy *, JJ., concur.