ACCEPTED
03-14-00660-CV
6585410
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/20/2015 2:48:47 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00660-CV

# In The Court of Appeals For the Third District of Texas at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/20/2015 2:48:47 PM
JEFFREY D. KYLE
Clerk

CRAIG ZGABAY AND TAMMY ZGABAY,

Appellants,

v.

NBRC PROPERTY OWNERS ASSOCIATION,

Appellee.

On Appeal from the 433rd District
Court of Comal County, Texas
Trial Court Cause No. C2014-0501C

## Unopposed Tex. R. App. P. 38.7 Motion to Supplement (with Proposed Supplemental Case Citation)

J. Patrick Sutton
SBOT 24058143
1706 W. 10th Street
Austin Texas 78703
Tel. (512) 417-5903
Fax. (512) 355-4155
*jpatricksutton@jpatricksuttonlaw.com*

Counsel for Appellants

August 20, 2015

**Motion to Supplement and Supplemental Case Citation**

Appellants the Zgabays hereby seek leave to supplement their case authority. The Zgabays' brief listed unanimity amongst the 14 other states that have rejected the argument that short-term rentals constitute a "business use." Brief of Appellants at 33-34. A 15th state, Colorado, has joined in the unanimity. *Houston v. Wilson Mesa Ranch Homeowners Ass'n, Inc.*, 2015 COA 113, ¶ 18, 2015 WL 4760331 (Colo. App. Aug. 13, 2015). A copy of the opinion is attached hereto for the Court's convenience.

**Conclusion and Prayer**

Accordingly, the Zgabays ask that the Court grant this motion and, for brevity, consider their brief supplemented with the above case authority.

Respectfully submitted,
***/s/ JPS***
J. Patrick Sutton
Texas Bar No. 24058143
1706 W. 10th Street
Austin Texas 78703
Tel. (512) 417-5903
Fax. (512) 355-4155
*jpatricksutton@*
*jpatricksuttonlaw.com*

Attorney for Appellants

## CERTIFICATE OF SERVICE

I certify that on August 20, 2015, per T.R.A.P. 6.3(b), a true and correct copy of this amended brief was served by efiling and email on:

Tom Newton
Allen Stein & Durbin, P.C.
6243 IH-10 West, 7th Floor
San Antonio, Texas 78201
*TNewton@ASDH.com*

Brian Hensley
Thompson, Coe, Cousins & Irons, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Ph (512) 708-8200
Fax (512) 708-8777
*BHensley@thompsoncoe.com*

/s/ *J. Patrick Sutton*
Attorney for Plaintiffs-Appellants

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Brian Hensley, counsel for Appellee, regarding this motion, and that he stated his clients are not opposed to this motion.

/s/ *J. Patrick Sutton*
Attorney for Appellants

**2015 WL 4760331**

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. A PETITION FOR REHEARING IN THE COURT OF APPEALS OR A PETITION FOR CERTIORARI IN THE SUPREME COURT MAY BE PENDING.

Colorado Court of Appeals,
Div. III.

David HOUSTON, Trustee of the
David Houston 1997 Trust dated
October 6, 1997, Plaintiff–Appellee,

v.

WILSON MESA RANCH HOMEOWNERS
ASSOCIATION, INC., a Colorado nonprofit
corporation, Defendant–Appellant.

Court of Appeals No. 14CA1086
|    Announced August 13, 2015

San Miguel County District Court No. 13CV30034, Honorable Mary E. Deganhart, Judge.

**Attorneys and Law Firms**

Solomon Law Firm, P.C., Joseph A. Solomon, Telluride, Colorado, for Plaintiff–Appellee.

Dewhirst & Dolven, LLC, Miles M. Dewhirst, Jeffery D. Bursell, Denver, Colorado; Garfield & Hecht, PC, Mary Elizabeth Geiger, Glenwood Springs, Colorado, for Defendant–Appellant.

**Opinion**

Opinion by JUDGE VOGT [*]

[*]    Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2014.

**\*1**   ¶ 1 In this dispute regarding the scope of restrictive covenants, defendant, Wilson Mesa Ranch Homeowners Association, Inc., appeals the district court's judgment on the pleadings in favor of plaintiff, David Houston, Trustee of the David Houston 1997 Trust dated October 6, 1997. We affirm.

**I. Background**

¶ 2 Wilson Mesa Ranch is a subdivision in San Miguel County. The subdivision is subject to protective covenants that are enforced by the Association's board of trustees. The covenants provide, as relevant here, that "the lands within Wilson Mesa Ranch [are intended to] be developed and maintained as a highly desirable scenic and secluded residential area;" that all tracts designated on the recorded plats by number "shall be residential tracts;" and that "[n]o lands within Wilson Mesa Ranch shall ever be occupied or used for any commercial or business purpose nor for any noxious activity and nothing shall be done ... on any of said lands which is a nuisance or might become a nuisance to the ... owners of any of said lands."

¶ 3 Houston owns a single-family residence in the subdivision. Beginning in December 2012, Houston began renting out the property for short-term vacation rentals. He advertised the residence on the website of VRBO, a company that facilitates the booking of such rentals. When the board learned that Houston had been renting out the residence, it adopted an amendment ("Section 11") to its administrative procedures that prohibited Association members from renting out their properties for periods of less than thirty days without prior board approval. Section 11 also provided for a $500 fine for each violation of this prohibition.

¶ 4 The board notified Houston of its adoption of Section 11 and ordered him to comply with it. Houston objected to Section 11 as an unlawful attempt to amend the covenants. The board responded that short-term rentals were a commercial use that was already prohibited under the covenants, and that Section 11 was simply adopted to clarify the board's position and set forth procedures for seeking an exception to the prohibition.

¶ 5 After the board denied Houston's request to continue leasing the property on a short-term basis, he took two additional rental reservations through VRBO. The board treated these reservations as anticipatory breaches of the covenants and Section 11 and fined Houston $500 for each reservation.

¶ 6 Houston then filed this action, seeking a declaration that the Association could not bar the short-term rental of his property based on the commercial use prohibition in the covenants. The Association counterclaimed for a declaration

that the covenants barred rentals of less than thirty days; that Section 11 was enforceable against Houston; and that Houston was in violation of the covenants and Section 11 by advertising, and taking reservations for, short-term rentals of his property. The Association also sought a permanent injunction requiring Houston to comply with the covenants and Section 11.

**\*2** ¶ 7 Both parties moved for judgment on the pleadings pursuant to C.R.C.P. 12(c). In a detailed written order, the district court entered judgment in favor of Houston and dismissed the Association's counterclaims. It reviewed the covenant language, found no Colorado case law that was "dispositive on the issue of whether a prohibition on commercial use bars short term rentals or conversely whether the requirement of residential use is somehow inconsistent with short term rentals," and reviewed cases from other jurisdictions that the parties had cited. The court concluded that nothing in the covenants prohibited short-term rentals, either expressly or by implication; that the covenant language was ambiguous regarding the permissibility of short-term rentals; and that, because such ambiguity required that all doubts be resolved in favor of the free and unrestricted use of property, the covenants did not prohibit or limit Houston's short-term vacation rentals. It also found that Section 11's "differentiation between forbidden 'short term' rentals and permitted 'long term' rentals [was] arbitrary and ... not plainly within the confines of the [c]ovenants;" thus, the fines imposed against Houston were not enforceable.

## II. Discussion

### A. Standards of Review and Applicable Law

¶ 8 Our review is de novo, both because the district court's judgment was a judgment on the pleadings, *see Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.,* 2012 CO 61, ¶ 17, 287 P.3d 842, and because the court construed a written instrument. *See In re Estate of Foiles,* 2014 COA 104, ¶ 20, 338 P.3d 1098.

¶ 9 We construe restrictive covenants according to their plain language, interpreting them as a whole and keeping in mind their underlying purpose. *See Evergreen Highlands Ass'n v. West,* 73 P.3d 1, 3 (Colo. 2003); *Good v. Bear Canyon Ranch Ass'n,* 160 P.3d 251, 253 (Colo. App. 2007). A covenant will be enforced as written if it is clear on its face. *Good,* 160 P.3d at 253. However, if there is any ambiguity or doubt as to the

meaning of a covenant, we must adopt the construction that favors the unrestricted use of property. *Id.* at 253–54; *see also Double D Manor, Inc. v. Evergreen Meadows Homeowners' Ass'n,* 773 P.2d 1046, 1048 (Colo. 1989).

### B. Scope of the Covenants

¶ 10 It is undisputed that the covenants do not expressly prohibit short-term rentals of residences within Wilson Mesa Ranch. The issue is whether such rentals are prohibited by necessary implication based on covenant language that (1) Wilson Mesa Ranch is to "be developed and maintained as a ... residential area," with all subdivision tracts to be "residential tracts," and that (2) "[n]o lands within Wilson Mesa Ranch shall ever be occupied or used for any commercial or business purpose." The Association contends that the district court erred in failing to construe the "commercial use" prohibition as precluding unapproved rentals of less than thirty days, and in failing to recognize that such short-term rentals are inconsistent with the covenants' "residential use" requirement. We disagree.

¶ 11 We are aware of no Colorado case that has addressed the meaning of prohibitions against "commercial use" or requirements of "residential use" in the context of short-term rentals of residences. With the exception of *Double D Manor,* discussed below, Colorado case law discussing these terms in other contexts affords little guidance in resolving the issue before us.

¶ 12 Like the district court, we find the two Colorado cases on which the Association relies—*Jackson & Co. (USA), Inc. v. Town of Avon,* 166 P.3d 297, 298–300 (Colo. App. 2007), and *E.R. Southtech, Ltd. v. Arapahoe County Board of Equalization,* 972 P.2d 1057, 1059–60 (Colo. App. 1998)— to be distinguishable. The *Jackson* division concluded that a duplex with six individual bedroom-bathroom suites, used for short-term vacation rentals, qualified as a "lodge" under the definition of that term in a municipal ordinance; thus, such short-term rentals were impermissible under the ordinance and a subdivision plat that explicitly prohibited the use of property within the residential subdivision as a lodge. There is no such explicit prohibition in the covenants here.

¶ 13 In *Southtech,* the division held that, for property tax purposes, rentals of space in a large housing complex for less than thirty days should be taxed as a "hotel-type commercial use," while longer rentals should be taxed as "apartment-

type residential" use. The division relied on constitutional and statutory provisions that excluded "hotels and motels" from the definition of "residential real property" for property tax purposes but included "apartments" in that definition. Again, the covenants at issue here do not contain similar definitional language.

**\*3** ¶ 14 We therefore look to the plain meaning of the covenant language, and we find guidance in cases from other jurisdictions that have applied this language in situations involving short-term rentals of residential property.

## 1. Requirement That Subdivision Tracts Be "Residential"

¶ 15 "Residential" is defined as "used, serving, or designed as a residence or for occupation by residents." *Webster's Third New International Dictionary* 1931 (2002). "Residence" means "the act or fact of abiding or dwelling in a place for some time; an act of making one's home in a place." *Id.; see also The American Heritage Dictionary of the English Language* 1483 (4th ed. 2000) (defining "residential" as "[o]f, relating to, or having residence," or "[o]f, suitable for, or limited to residences," and defining "residence" as "[t]he place in which one lives; a dwelling," or "[t]he act or a period of residing in a place").

¶ 16 " 'Residential use,' without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode." *Lowden v. Bosley,* 395 Md. 58, 909 A.2d 261, 267 (2006); *see also Mullin v. Silvercreek Condo. Owner's Ass'n,* 195 S.W.3d 484, 490 (Mo. Ct. App. 2006) (A place used for "residential purposes" is, according to its plain and ordinary meaning, "one in which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes." (quoting *Blevins v. Barry–Lawrence Cnty. Ass'n for Retarded Citizens,* 707 S.W.2d 407, 408 (Mo. 1986))).

¶ 17 Although "residential" unambiguously refers to use for living purposes, courts have recognized ambiguity in the term in cases involving short-term rentals or other situations where those residing in the property are living there only temporarily, not permanently. *See Yogman v. Parrott,* 325 Or. 358, 937 P.2d 1019, 1021 (1997) ("The ordinary meaning of 'residential' does not resolve the issue between the parties. That is so because a 'residence' can refer simply to a building

used as a dwelling place, or it can refer to a place where one intends to live for a long time."); *Scott v. Walker,* 274 Va. 209, 645 S.E.2d 278, 283 (2007) (Restrictive covenant's requirement that lots be used for "residential purposes" was "ambiguous both as to whether a residential purpose requires an intention to be physically present in a home for more than a transient stay and as to whether the focus of the inquiry is on the owner's use of the property or the renter's use.... Moreover, if the phrase 'residential purposes' carries with it a 'duration of use' component, it is ambiguous as to when a rental of the property moves from short-term to long-term."); *see also Dunn v. Aamodt,* 695 F.3d 797, 800 (8th Cir. 2012) (phrase "residential purposes" in restrictive covenant was ambiguous as to short-term rental of property). These courts concluded that, because ambiguities in restrictive covenants were to be construed in favor of the free use of property, short-term rentals were not precluded as inconsistent with residential use.

¶ 18 Other courts have found no ambiguity, reasoning that, as long as the property is used for living purposes, it does not cease being "residential" simply because such use is transitory rather than permanent. In *Lowden,* 909 A.2d at 267, the court summarized cases applying the term "residential" to a variety of structures used for habitation purposes and recognizing that the transitory or temporary nature of such use did not defeat the residential status. It concluded that "[w]hen the owner of a permanent home rents the home to a family, and that family, as tenant, resides in the home, there obviously is no violation of the [d]eclaration. While the owner may be receiving rental income, the use of the property is unquestionably 'residential'." *Id.* In *Pinehaven Planning Board v. Brooks,* 138 Idaho 826, 70 P.3d 664, 667–68 (2003), the covenants at issue restricted the use of residential property to the construction of a single-family residence, which could not be used for commercial, industrial, or business purposes. The Idaho Supreme Court held that renting a property to people who used it for residential purposes, whether short or long term, did not violate the covenants. *Id.* at 668–69; *see also Slaby v. Mountain River Estates Residential Ass'n,* 100 So.3d 569, 579 (Ala. Civ. App. 2012) ("[P]roperty is used for 'residential purposes' when those occupying it do so for ordinary living purposes. Thus, so long as the renters continue to relax, eat, sleep, bathe, and engage in other incidental activities ... they are using the [property] for residential purposes."); *Ross v. Bennett,* 148 Wash.App. 40, 203 P.3d 383, 388 (2008) (rejecting argument that short-term vacation rentals were distinguishable from permitted long-term rentals and concluding that: "Renting the ... home

to people who use it for the purposes of eating, sleeping, and other residential purposes is consistent with the plain language of the ... [c]ovenant. The transitory or temporary nature of such use by vacation renters does not defeat the residential status.").

**\*4** ¶ 19 In this case, the pleadings and attached documents do not suggest that renters used Houston's residence for anything other than ordinary living purposes, and the Association does not so argue. [1] In these circumstances, we agree with the courts that have held that mere temporary or short-term use of a residence does not preclude that use from being "residential." Moreover, even if we were to find the covenants ambiguous in this regard, we would be required to adopt the construction of "residential" that favors the free and unrestricted use of Houston's property. *See Good,* 160 P.3d at 253–54.

[1]     In a letter to the Association (which, because it was attached to Houston's verified complaint, could be considered by the district court in ruling on cross-motions under C.R.C.P. 12(c), *see Van Schaack v. Phipps,* 38 Colo.App. 140, 143, 558 P.2d 581, 584 (1976); *see also* C.R.C.P. 10(c)), Houston's counsel explained the use of the property as follows:

The HOA also argues that the current use is a commercial use. It is not. Mr. Houston has owned his Wilson Mesa home for over twenty years. At one point, he used the home for long-term rental. After that time, he made the decision he did not want the wear and tear on the house that permanent tenants bring. As a consequence he stopped renting it and hoped to use it more.

However, it became apparent without people in the house and the accompanying maintenance, the house actually suffered. Mr. Houston decided the best solution for the property was to have it used to some extent, and thus he has been leasing it out for some vacation rental use.

The home is very small. Occupancy is limited to a maximum of four guests. It is typically used by a couple, or a single adult. Mr. Houston also has a local caretaker handling maintenance and other related home needs.

The amount of people staying in the residence with one vehicle certainly presents less road traffic than if Mr. Houston had a permanent tenant with two vehicles. Also, Wilson Mesa is usually quite vacant. Most properties are rarely occupied second homes. Very few homes are occupied on a full time basis.

Also, these are seven acre parcels and do not have neighbors wall to wall.

### 2. Prohibition Against Commercial Use

¶ 20 "Commercial" means "occupied with or engaged in commerce ... related to or dealing with commerce ... [or] having profit as the primary aim." *Webster's Third New International Dictionary* 456 (2002). "Commerce," in turn, means "the exchange or buying and selling of commodities esp. on a large scale," but it can also mean "dealings of any kind." *Id.* A "commercial use" is one "that is connected with or furthers an ongoing profit-making activity." *Black's Law Dictionary* 1775 (10th ed. 2014).

¶ 21 As with the requirement of "residential use," the dictionary definitions of "commercial" and "commercial use" do not by themselves resolve the question of whether short-term vacation rentals are prohibited under the covenants at issue here; and the covenants do not further define those terms.

¶ 22 As in cases construing "residential use," some courts have recognized an ambiguity in the term "commercial use" when deciding whether prohibitions against commercial use apply to short-term rentals of residential property. *See Yogman,* 937 P.2d at 1021 ("commercial" use encompasses a broad range of meanings, from merely using the property in a way that generates revenue up to operating a business, such as a bed and breakfast, with profit as its primary aim); *see also Russell v. Donaldson,* 222 N.C.App. 702, 731 S.E.2d 535, 538–39 (2012) (where covenants did not define "business or commercial purpose," they were ambiguous as to whether short-term residential vacation rentals came within the prohibition against use of lots for such purpose; however, upon review of cases from other states, and given requirement that ambiguities be construed in favor of unrestricted use of property, court held that prohibition did not bar short-term residential vacation rentals).

**\*5** ¶ 23 Other courts have held that prohibitions against commercial or business uses unambiguously do not bar short-term vacation rentals of residences where a renter uses the premises for residential activities such as eating and sleeping and not for commercial activities such as running a business. In *Slaby,* a residential association claimed that property owners' short-term rentals of their cabin violated restrictive covenants prohibiting commercial use. 100 So.3d at 571. However, the court reviewed case law from other states

and agreed with "the majority of other jurisdictions" that rental of the cabin for eating, sleeping, and other residential purposes did not amount to commercial use. *Id.* at 580–82; *see also Pinehaven Planning Bd.,* 70 P.3d at 668 ("[R]enting [defendants'] dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood."); *Lowden,* 909 A.2d at 267 ("The owners' receipt of rental income in no way detracts from the *use* of the properties as *residences* by the tenants."); *Mason Family Trust v. DeVaney,* 146 N.M. 199, 207 P.3d 1176, 1178 (N.M.Ct.App.2009) ("While [the owner's] renting of the property as a dwelling on a short-term basis may have constituted an economic endeavor on [his] part, to construe that activity as one forbidden by the language of the deed restrictions [prohibiting use for business or commercial purposes] is unreasonable and strained. Strictly and reasonably construed, the deed restrictions do not forbid short-term rental for dwelling purposes.").

¶ 24 We agree with the cases discussed above and conclude that short-term vacation rentals such as Houston's are not barred by the commercial use prohibition in the covenants. Our conclusion is consistent with the Colorado Supreme Court's holding, in a different context, that receipt of income does not transform residential use of property into commercial use. In *Double D Manor,* the court addressed a homeowners association's challenge to use of property in the subdivision as a home for developmentally disabled children. 773 P.2d at 1046. In rejecting the association's argument that such use was not a permissible "residential use" because Double D used the property to earn money to pay wages and cover costs, the court stated: "Double D's receipt of funding and payment to its staff to supervise and care for the children do not transform the use of the facilities from residential to commercial." *Id.* at 1051.

¶ 25 Finally, we are not persuaded to reach a contrary conclusion based on the cases on which the Association relies.

¶ 26 *Ewing v. City of Carmel–By–The–Sea,* 234 Cal.App.3d 1579, 286 Cal.Rptr. 382, 388 (1991), cited by the Association for the proposition that short-term vacation rentals are inconsistent with the residential character of a neighborhood, was addressing the validity of a municipal ordinance explicitly prohibiting rentals under thirty days in an area zoned for single-family residential use; it was not interpreting a covenant lacking any such explicit prohibition. In *Mission Shores Ass'n v. Pheil,* 166 Cal.App.4th 789, 83 Cal.Rptr.3d

108, 110–13 (2008), the amended covenants—unlike the covenants here—expressly prohibited rentals of under thirty days. Similarly, in *Munson v. Milton,* 948 S.W.2d 813, 817 (Tex.App.1997), the court relied on specific language in the covenants that defined "business use" to include "transient-type housing" as supporting a conclusion that short-term rentals were prohibited.

¶ 27 Finally, in concluding that short-term rentals were prohibited under the covenants at issue in *Benard v. Humble,* 990 S.W.2d 929, 930 (Tex.App.1999), the court applied a Texas statute requiring that covenant language be "liberally construe[d]." Noting the tension between the statutory requirement and the common law, the court observed:

> The present case is a prime example of the dilemma: The deed restrictions in question do not explicitly contain language covering temporary renting of property. Were we to give construction against the drafter of the covenant [instead of liberally construing it], we would be required to reverse the trial court's judgment [finding that short-term rentals are prohibited].

*Id.* at 931.

¶ 28 Unlike Texas, Colorado adheres to the common law principle that ambiguities in covenants are construed in favor of the unrestricted use of property. [2]

[2] In its reply brief, the Association also cites unpublished cases from three other jurisdictions. Because these unpublished opinions are not to be used as precedent under the rules of those jurisdictions, we do not consider them.

**\*6** ¶ 29 In sum, we conclude that Houston's short-term vacation rentals are not barred under the covenants.

### C. Validity of Section 11

¶ 30 The Association further contends that the district court erred in concluding that Section 11, the amendment to the board's administrative procedures that precludes unapproved short-term rentals and imposes fines for violations of that prohibition, was arbitrary and thus unenforceable. We agree

with the district court that Section 11 is unenforceable, although we reach that conclusion for reasons other than those stated by the district court. *See Meister v. Stout,* 2015 COA 60, ¶ 8, —— P.3d —— (where district court reaches correct result, its judgment may be affirmed on different grounds that are supported by the record).

¶ 31 The Association argues that Section 11 was adopted at a "duly called and duly conducted board meeting" to "clarif[y] that the [covenants'] prohibition on commercial and business uses of property ... prohibits the unapproved short-term rental" of lots within the subdivision. However, as set forth above, the covenants do not prohibit such rentals.

¶ 32 Thus, while the Association has the authority to enforce the covenants, it cannot rely on that authority to enforce a nonexistent covenant provision. For short-term vacation rentals to be prohibited, the covenants themselves must be amended. It is undisputed that the amendment procedure set forth in the covenants—which, among other things, requires a vote of three-fourths of the Association members and permits such vote only at ten-year intervals—was not followed here. The board's attempt to accomplish such amendment through its administrative procedures was unenforceable. *See Mauldin v. Panella,* 17 P.3d 837, 838–39 (Colo. App. 2000) (purported amendments to restrictive covenants that would have precluded the plaintiff's proposed use of his

property were invalid because they were not promulgated in compliance with covenant provisions regarding amendment procedures); *Johnson v. Howells,* 682 P.2d 504, 505 (Colo. App. 1984) (same); *cf. Good,* 160 P.3d at 253–55 (where covenants allowed amendment and amendment procedures were followed, amendment prohibiting construction of guest houses and caretaker residences was valid).

### D. Attorney Fees

¶ 33 Given our resolution of the issues raised in this appeal, we deny the Association's request for attorney fees under section 38–33.3–123(1)(c), C.R.S. 2014.

### III. Conclusion

¶ 34 The judgment is affirmed.

JUDGE LICHTENSTEIN and JUDGE FOX concur.

**All Citations**

--- P.3d ----, 2015 WL 4760331, 2015 COA 113

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.